1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

PETER MANENICA,

             Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

             Defendant.

CASE NO. 12-cv-05131 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos.

14, 18, 22).

1   While this former recipient of Social Security benefits has shown some changes in

2   his condition since he was first awarded benefits, the ALJ failed to evaluate properly or to

3   make further inquiry regarding those conditions on rehearing.  Specifically, the ALJ

4   failed to evaluate properly the opinion testimony from the Administration's examining

5   consultant, Dr. Mark Heilbrunn, M.D. ("Dr. Heilbrunn"), who identified limitations on

6   plaintiff's ability to work, but failed to quantify those limitations.  Further, the ALJ failed

7   entirely to evaluate some claimed impairments and the lay testimony from plaintiff's

8   friend, Aaron Erickson, or his brother, Michael Manenica.  For these reasons, and for

9   other reasons set forth below, the Court concludes that the ALJ's findings are not

10  supported by substantial evidence in the record as a whole.  Since this matter has not

11  been fully developed, this case is REVERSED and REMANDED pursuant to sentence

12  four of 42 U.S.C. § 403(g) for further administrative proceedings.

13

14                                   <u>BACKGROUND</u>

15  Plaintiff, PETER MANENICA, initially was awarded Social Security benefits on

16  June 20, 2002.  Before that time, plaintiff had been a longshoreman for 19 years (Tr.

17  218). He injured his back on the job in 1998 and was unable to maintain his previous

18  work schedule  (*id.*) At the time of his initial award, he had the following medically

19  determinable impairments:  chronic back pain with herniated disc at L5-S1; disc bulge at

20  L4-5; and dysthymia (Tr. 17).  He also had moderate deficits in his ability to understand,

21  carry out and remember instructions, use judgment in making work related decisions, and

22  respond appropriately with supervisors, co-workers, work situations, and deal with

23  changes in a routine work setting (*id.*).

24

ORDER ON PLAINTIFF'S COMPLAINT - 2

Following this initial determination, plaintiff underwent lumbar surgery in 2003 (Tr. 18).  Although he initially showed improvement, he reinjured his back and also reported problems with his knees, which he attributed to wear and tear from his job (Tr. 221).  He then had surgery on his left knee (*id.*). He also has reported problems with neck pain (Tr. 225).  Plaintiff attempted to return to his previous employment as a longshoreman in 2007, with a more limited, light level job of driving cars off the ship to a parking lot (Tr. 224).  However, after six or seven shifts, he had to give up the job due to back pain (Tr. 218, 224).  Since that time, he has remained unemployed.

Pursuant to the Administration's policy, plaintiff was examined by administrative examining physician Dr. Mark Heilbrunn, M.D. ("Dr. Heilbrunn") in December of 2008 (Tr. 21).  Dr. Heilbrunn concluded that plaintiff was capable of working at the light levels of exertion and would be able to maintain activities of walking and standing for at least one hour uninterrupted and "after adequate resting," resume similar activities (Tr. 169).  "After adequate resting" was not further defined.  Following that examination, the administration terminated plaintiff's benefits due to alleged "medical improvement" (Tr. 59-67).  On January 21, 2011, this decision was reviewed by Administrative Law Judge Gordon W. Griggs ("the ALJ") (Tr. 24).  The ALJ concluded that plaintiff's impairments did not prevent him from being employed as a folder, production line solderer or semi-conductor die loader (Tr. 23-24).  Therefore, he upheld the Administration's decision to terminate benefits.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 6, 2012 (Tr. 4-6), making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6).  *See* 20 CFR §404.981.

Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision (ECF No. 4).  On May 8, 2012 defendant filed the sealed administrative record ("Tr.") (ECF No. 12).

In his Opening Brief plaintiff raises the following issues:

1   Whether or not the ALJ provided adequate reasons for rejecting the opinion of the Commissioner's examining special, Dr. Heilbrunn, that Mr. Manenica's impairments necessitate a rest period after one hour of work;

2   Whether or not the ALJ was required to consider the opinion of the Vocational Expert that position changes every 30 minutes would not be tolerated by any employer;

3   Whether or not the ALJ's Step 2 findings that Mr. Manenica's depression and cervical spine impairments were non-severe is reasonable;

4   Whether or not the ALJ's adverse credibility analysis was legally adequate;

5   Whether or not the ALJ was required to consider the lay evidence from Mr. Manenica's friend, Mr. Erickson, and his brother, Michael Manenica;

6   Whether or not the jobs identified by the VE were consistent with the DOT and the ALJ's limitation regarding working around machinery, and if not, whether the ALJ complied with SSR 00-4p.

7   Whether this case should be remanded for payment of benefits or for further administrative proceedings.

## STANDARD OF REVIEW

To determine whether or not a claimant's disability has ceased, the ALJ must follow an eight-step evaluation process for the Title II claim and a seven-step process for

the a Title XVI claim. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5). At step one (Title II only), the ALJ must determine whether or not the claimant is engaging in substantial gainful activity. 20 C.F.R. §§ 404.1594(f)(1). At step two of the Title II sequential analysis, and step one of the Title XVI sequential analysis [hereinafter referred to as "step two"], the ALJ must determine whether or not claimant has an impairment or combination of impairments that meets or medically equals "the severity of an impairment listed in appendix 1 of subpart P of part 404 of this chapter [20 C.F.R.]." 20 C.F.R. §§ 404.1594(f)(2), 416.994(b)(5)(i).

Next, (step three, Title II/ step two, Title XVI), the Commissioner must determine whether or not there has been any medical improvement in the claimant's condition. 20 C.F.R. § 404.1594(f)(3); *see also* 20 C.F.R. §§ 404.1594(a), 416.994(b)(5)(ii). Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1), (f)(3) *See also Potts v. Commissioner of Social Security Administration*, 357 Fed. Appx. 49, 50 (9th Cir. 2009) (*per curiam*) (unpublished) (*quoting* 20 C.F.R. § 404.1594(b)(1), (f)(3))..

Subsequently, (step four, Title II/ step three, Title XVI), the ALJ must determine whether or not medical improvement is related to the ability to work, "*i.e.*, whether or not there has been an increase in the residual functional capacity." 20 C.F.R. §§ 404.159(f)(4), 416.994(b)(iii). If there has been no medical improvement or the medical improvement is not related to the claimant's ability to work, at step five, the ALJ next considers whether or not an exception to medical improvement applies. 20 C.F.R. §§

404.1594(f)(5), 416.994(b)(5)(iv). At step six of the Title II analysis, (step five, Title XVI), the ALJ must determine whether or not the claimant's current impairments in combination are severe. 20 C.F.R. §§ 404.1594(f)(6), 416.994(b)(5)(v). At step seven of the Title II sequential analysis, (step six, Title XVI), the ALJ assesses claimant's residual functional capacity and determines whether or not he can perform his past relevant work. 20 C.F.R. §§ 404.1594(f)(7), 416.994(b)(5)(vi); Social Security Ruling ("SSR") 82-61, 1982 WL 31387. If the ALJ reaches the final step in the sequential analysis, the burden shifts to the Commissioner to prove that the claimant can perform other work in the national economy, given his age, education, residual functional capacity ("RFC") and past work experience (*see* Response Brief, ECF No. 16, p. 6). *Cf. Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *see also* 20 C.F.R. §§ 404.1594(f)(8), 416.994(b)(5)(vii).

Prior to the final step, the burden to prove disability and continuing entitlement to disability benefits is on plaintiff. *Cf. Bowen, supra*, 482 U.S. at 146 n.5 (1987); *see also* 42 U.S.C. § 423(f)(1); 20 C.F.R. §§ 404.1594, 416.994. However, there must be substantial evidence that medical improvement has occurred. 42 U.S.C. § 423(f)(1). "Any determination made under this section shall be made on the basis of the weight of the evidence and on a neutral basis with regard to the individual's condition, without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." *Id.*

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did

1    not invoke in making its decision") (citations omitted). For example, "the ALJ, not the

2    district court, is required to provide specific reasons for rejecting lay testimony." *Stout,*

3    *supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

4    the context of social security appeals, legal errors committed by the ALJ may be

5    considered harmless where the error is irrelevant to the ultimate disability conclusion

6    when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App.

7    LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v.*

8    *Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

**1.  The ALJ failed to provide adequate reasons for rejecting the opinion of the Commissioner's examining specialist, Dr. Heilbrunn, that Mr. Manenica's impairments necessitated a rest period after one hour of work.**

Plaintiff characterizes the ALJ's conclusion as "rejecting" the opinion of Dr.

Heilbrunn.  It appears that the ALJ simply chose to interpret Dr. Heilbrunn's conclusions

and add definitions that were not in Dr. Heilbrunn's report.  Specifically, Dr. Heilbrunn

concluded that plaintiff "could be expected to sit for at least 30 minutes uninterrupted . . .

and for a total of 6/8 hours with periods for postular repositioning" (Tr. 168). He also

concluded that plaintiff "could be expected to stand and walk for at least 30 minutes

uninterrupted . . . and for a cumulative length of time of 5-6/8 hours with periods for

postural repositioning/resting" (*id.*). Therefore, he concluded that plaintiff could engage

in activity, and "after adequate resting," resume such activities (Tr. 169).  Dr. Heilbrunn

did not explain what he meant by "adequate resting."

The ALJ states that he gave great weight to the opinions expressed by Dr. Heilbrunn (Tr. 222).  Unfortunately, because Dr. Heilbrunn did not define "adequate resting" the ALJ was forced into a position of providing his own definition, treating this aspect of Dr. Heilbrunn's opinion as if his opinion was unqualified or developing the record further.  In describing his analysis, the ALJ rejected plaintiff's testimony that he needed a 15 minute break at one hour intervals (Tr. 21).  Nor did the ALJ provide any further definition for "adequate resting."  Instead, he evaluated the impairments with the Vocational Expert's  ("VE"), without providing any consideration for "adequate resting" (*see* Tr. 239).  Therefore, although the ALJ gave Dr. Heilbrunn's conclusions great weight, the ALJ nevertheless failed to credit Dr. Heilbrunn's conclusion that the claimant needed "adequate rest" periodically.  Nor did the VE take this into consideration when answering the ALJ's questions regarding plaintiff's capabilities. Similarly, the ALJ's determination regarding plaintiff's residual functional capacity ("RFC") indicates that plaintiff has "only a few minutes" to make his position changes to alleviate pain (*see* Tr. 20). The record is ambiguous as to whether or not this finding is consistent with the opinion of Dr. Heilbrunn that plaintiff required "adequate resting" (*see* Tr. 169). More is required of the ALJ, as the ALJ did not adequately explain why Dr. Heilbrunn's opinion was not adopted. *See* SSR 96-8p, 1996 SSR LEXIS 5 at *20 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted").

Although Dr. Guthrie Turner, M.D. ("Dr. Turner") found that plaintiff required the ability to alternate between sitting and standing, and did not explicitly contradict Dr.

1   Heilbrunn's conclusions, Dr. Turner does not appear to have opined that plaintiff required

2   rest periods (*see* Tr. 146-53). The ALJ must provide "clear and convincing" reasons for

3   rejecting the uncontradicted opinion of either a treating or examining physician or

4   psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v.

5   Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th

6   Cir. 1990)).  Even if a treating or examining physician's opinion is contradicted, that

7   opinion "can only be rejected for specific and legitimate reasons that are supported by

8   substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v.

9   Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)).

10

11          The ALJ noted only the evidence mentioned in Dr. Heilbrunn's report, yet

12   arguably came to different conclusions (*see* Tr. 21). In doing so, however, the ALJ failed

13   to explain adequately why his interpretation was more correct than that of the doctor,

14   committing legal error. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (the

15   ALJ must explain why his own interpretations, rather than those of the doctors, are

16   correct) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  By failing to

17   account for Dr. Heilbrunn's conclusions, the ALJ impliedly rejected those conclusions.

18   The ALJ failed to provide specific and legitimate reasons for rejecting these conclusions.

19   *See Lester, supra*, 81 F.3d at 830-31. Therefore, the ALJ's findings are not supported by

20   substantial evidence in the record as a whole.  *See Bayliss, supra*, 427 F.3d at 1214 n.1

21   (*citing Tidwell, supra*, 161 F.3d at 601).

22

23          Furthermore, the ALJ "has an independent 'duty to fully and fairly develop the

24   record.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v.

*Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous evidence or if the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).

Dr. Heilbrunn's conclusion that plaintiff required "adequate rest periods" was ambiguous evidence and the ALJ, rather than simply ignoring this conclusion, should have attempted to supplement the record to allow for a proper evaluation of this evidence. *See Mayes*, *supra,* 276 F.3d at 459-60; *Tonapetyan*, 242 F.3d at 1150.

### 2   The ALJ was required to consider the opinion of the Vocational Expert that position changes every 30 minutes would not be tolerated by any employer.

The VE's testimony similarly was ambiguous.  On the one hand, after being provided plaintiff's limitations that included walking every 30 minutes to alleviate pain, the VE concluded that plaintiff could be engaged in several alternative forms of employment. Then, the VE explained that if an employee needed to walk away from his job for two to three minutes every 30 minutes, this may affect the pace of the job and employers "would possibly not tolerate that kind of walking away from the job area" (Tr. 242).  Dr. Heilbrunn never explained what he meant by "periods for postural repositioning" (*see* Tr. 168-69). Nevertheless, the ALJ concluded that these changes of position could last "a few minutes."  It is unclear and unknown whether or not the hypothetical was consistent with Dr. Heilbrunn's evaluation.  It is clear that in light of the VE's conclusion that the employer "would possibly not tolerate that kind of walking

away from the job area" (Tr. 242), the ALJ's conclusion is not supported by substantial evidence in the record. *See Magallanes, supra*, 881 F.2d at 750.

### 3   The ALJ's Step 2 findings that Mr. Manenica's depression and cervical spine impairment were non-severe are not reasonable.

In the ALJ's written decision, the ALJ listed a number of severe impairments but failed to list or make reference to any problems with plaintiff's cervical spine and failed to evaluate plaintiff's depression properly (Tr. 17).  The ALJ found that plaintiff's depression has "improved and is no longer a severe impairment" (Tr. 18). Although the ALJ noted that plaintiff was not receiving any treatment for his depression, this fact standing alone does not demonstrate that plaintiff's depression was not severe, as the ALJ has not explained his apparent inference that a claimant who does not seek out mental health treatment must therefore not have any functional limitations on his ability to work. Although a lack of adherence with prescribed treatment may call into question a Social Security claimant's credibility regarding the severity of the alleged symptoms and impairments, *see* 20 C.F.R. § 404.1530; SSR 96-7 1996 SSR LEXIS 4, at *21-*22, a person suffering from a mental illness may not realize that he needs his medication, or he may not even realize that his "condition reflects a potentially serious mental illness." *See Van Nguyen, supra*, 100 F.3d at 1465. When a person suffers from a mental illness, and the mentally ill person does not have the requisite insight into his condition to seek treatment, this fact actually can indicate a greater severity of mental incapacity. *See Van Nguyen, supra*, 100 F.3d at 1465; (*citing Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) ("it is a questionable practice to chastise one with a mental impairment for

the exercise of poor judgment in seeking rehabilitation")). In addition, evidence in the record suggests that plaintiff failed to take medication for mental impairments because of the effect such medications had on his sister (*see* Tr. 232). It is error for the ALJ to "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7 1996 SSR LEXIS 4 at *22; *see also Regennitter v. Comm'r SSA,* 166 F.3d 1294, 1296 (9th Cir. 1999) ("Although we have held that 'an unexplained, or inadequately explained failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony,' we have proscribed the rejection of a claimant's complaint for lack of treatment when the record establishes that the claimant could not afford it") (citations, ellipses and brackets omitted). The ALJ provided no analysis regarding plaintiff's claimed cervical spine impairment or his claimed depression.

However, plaintiff did submit evidence for consideration by the ALJ regarding both of these subjects. Regarding his cervical spine, plaintiff testified that he had neck pain (Tr. 225). Dr. Heilbrunn concluded that plaintiff had decreased range of motion in his cervical spine (Tr. 167) and diagnosed plaintiff with "cervical degenerative joint disease, no radiculopathy" (Tr. 168), which "may affect some activities in a sedentary position" (Tr. 169).

Regarding depression, plaintiff testified that he played Russian Roulette with himself (Tr. 156). In June of 2009, Kathleen S. Mayers, Ph.D. ("Dr. Mayers") provided a

mental health evaluation and concluded that plaintiff had a "depressed mood" with a diagnosis of Axis I: depressive disorder, NOS (311) (Tr. 174).  There was evidence presented to the ALJ that plaintiff felt sufficiently depressed that he had experienced suicidal thoughts and carried through with those thoughts by playing Russian roulette with a loaded gun about a dozen times, eight months prior (Tr. 156, 172).

The ALJ provided no analysis of either of these claimed impairments. This is insufficient. The ALJ failed to discuss any reason as to why plaintiff may have not been taking mental heath medication before inferring that plaintiff's depression was not severe due to lack of treatment. This was legal error. *See* SSR 96-7 1996 SSR LEXIS 4 at *22.

Step-two of the administration's evaluation process requires the ALJ to determine whether or not the claimant "has a medically severe impairment or combination of impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The Administrative Law Judge "must consider the combined effect of all of the claimant's impairments on [his] ability to function, without regard to whether each alone was sufficiently severe." *Smolen, supra*, 80 F.3d at 1290 (citations omitted).  The "step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Therefore, a finding that the disability of a claimant "is severe at step-two only raises a prima facie case of a disability." *Id.* (*citing Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work

activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

        According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at

146. Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS 19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Plaintiff provided more than *de minimis* evidence regarding his cervical spine condition and depression and the effect of these impairments on his ability to work.  This evidence largely was ignored by the ALJ.  At a minimum, the ALJ is required to acknowledge the alleged impairments and determine whether or not they are severe after a "careful examination of the medical findings that describe the impairments." *See* SSR 96-3p.  As noted above, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray, supra*, 554 F.3d at 1226-27 (*citing Chenery Corp., supra*, 332 U.S. at 196  (other citation omitted)); *see also Molina*, supra, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *42; *Stout, supra*, 454 F.3d at 1054 ("we cannot affirm the decision of an

agency on a ground that the agency did not invoke in making its decision") (citations omitted).

The ALJ failed to conduct an evaluation of these alleged impairments.  Therefore, his findings are not supported by substantial evidence.

**4.  The ALJ's adverse credibility analysis was not legally adequate.**

As noted above, the ALJ specifically rejected plaintiff's subjective interpretation of Dr. Heilbrunn's statement regarding "adequate resting" (Tr. 22).  Plaintiff testified that in his opinion, in order to be engaged in light work, plaintiff believed he would need a fifteen minute break every hour (Tr. 21).  Also as noted above, Dr. Heilbrunn did not explain what he meant by "adequate resting."  Nevertheless, the ALJ concluded that plaintiff's testimony in this regard was not credible (Tr. 22).  He did not conclude, however, that plaintiff was a malingerer as there was no evidence in the record to that effect.

Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding activities of daily living, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities  .  .  .  .  does not in any way detract from her credibility as to her overall disability." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (*quoting Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).

The Ninth Circuit specified "the two grounds for using daily activities to form the basis of an adverse credibility determination: (1) whether or not they contradict the claimant's other testimony and (2) whether or not the activities of daily living meet "the threshold for transferable work skills." *Orn, supra*, 495 F.3d at 639 (*citing Fair, supra*, 885 F.2d at 603). As stated by the Ninth Circuit, the ALJ "must make 'specific findings relating to the daily activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination. *Orn, supra*, 495 F.3d at 639 (*quoting Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).

Here, the ALJ did not provide clear and convincing reasons for rejecting plaintiff's testimony regarding his need for 15 minute rest periods.  Although the ALJ listed various daily activities that plaintiff did on a regular basis, there was no attempt to evaluate whether or not these daily activities were transferable to work skills.  The "mere fact that a plaintiff has carried on certain daily activities does not in any way detract from [his] credibility as to [his] overall disability." *Orn*, *supra*, 495 F.3d at 639.  Therefore, the ALJ's written decision regarding plaintiff's credibility is not supported by substantial evidence in the record.

### 5. The ALJ was required to consider the lay evidence from Mr. Manenica's friend, Mr. Erickson, and his brother, Michael Manenica.

The ALJ did not mention the written lay statement provided by plaintiff's friend, Aaron Erickson (Tr. 117-24), even though Mr. Erickson's testimony provided evidence regarding plaintiff's activities of daily living.  Nor did the ALJ mention the testimony of plaintiff's brother, Michael Manenica, who testified under oath at the hearing (Tr. 60).

Pursuant to the relevant federal regulations, in addition to "acceptable medical sources," that is, sources "who can provide evidence to establish an impairment," *see* 20 C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members, who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4).  An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work."  *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

In addition, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout, supra*, 454 F.3d at 1056 (reviewing cases).

Here, because the ALJ completely ignored the testimony of friends and family, and that testimony is relevant to the ultimate disability determination, the Court cannot consider this error harmless. *See id.*

**6. The issue of whether or not the jobs identified by the VE were consistent with the DOT and the ALJ's limitation regarding working around machinery should be evaluated anew following remand of this matter.**

Plaintiff points out that there is an inconsistency between the hypothetical provided by the ALJ and the jobs identified by the VE.  The ALJ clearly stated that the VE was to assume that the claimant should "avoid working with vibrating tools, machines and vehicles, and [] should avoid hazardous working conditions, such as proximity to unprotected heights and moving machinery" (Tr. 239).  Nevertheless, the VE identified jobs that required working with machinery and hazards without providing any explanation as to how these jobs could be performed without being in proximity to such hazards (Tr. 241-42).  These jobs include work as a folder [369.687-018], a solderer [813.684-022], and a loader of semi-conductor dies [726.687-030].  The VE failed to provide any explanation as to how these jobs fit the hypothetical and the ALJ did not attempt to explain how a person who cannot work around machinery or hazards would be able to engage in these occupations.

On remand, if these hypotheticals and occupations still are relevant, the ALJ should consider these incongruities and seek further explanation from the VE before rendering his decision.

**7. This case should be remanded for further administrative proceedings.**

Plaintiff has noted his frustration with the administrative process.  His counsel advised the Court that plaintiff has "relied on his disability benefits to survive since 2002. These benefits were discontinued when the ALJ issued his unfavorable decision.  Mr. Manenica has lost his medical coverage, his home and his dignity.  He is living on hand-

outs from his family and friends." (Plaintiff's Opening Brief, ECF No. 14, page 17).

Plaintiff argues that by allowing the Commissioner to decide the issue again would create

an unfair "heads we win, tails, let's play again" system of disability, which has been

specifically rejected by the Ninth Circuit in *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

Cir. 2004).

 While the Court recognizes plaintiff's frustration, the record simply is inadequate

to remand the case for the award of benefits.

 Generally, when the Social Security Administration does not determine a

claimant's application properly, "'the proper course, except in rare circumstances, is

to remand to the agency for additional investigation or explanation.'" *Benecke v.

Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  The Ninth Circuit

has put forth a "test for determining when [improperly rejected] evidence should be

credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d

1172, 1178 (9th Cir. 2000). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for
> rejecting such evidence, (2) there are no outstanding issues that must
> be resolved before a determination of disability can be made, and (3)
> it is clear from the record that the ALJ would be required to find the
> claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th

Cir.1996)).

 Here, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292.

The ALJ is responsible for determining credibility and resolving ambiguities and

conflicts in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998);

*Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).    If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).

Therefore, remand is appropriate to allow the Commissioner the opportunity to consider properly all of the lay and medical evidence as a whole and to incorporate the properly considered lay and medical evidence into the consideration of plaintiff's credibility and residual functional capacity. *See Sample, supra*, 694 F.2d at 642.

CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 9th day of November, 2012.


J. Richard Creatura
United States Magistrate Judge